UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

|  |  |  |
|---|---|---|
| LUCIA FELIX RODRIGUEZ, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.:  2:20-cv-93 |
| | : | |
| CITY PINESTRAW AND HARVESTING, | : | |
| LLC; FRANCISCO SEGURA; and MARIA | : | |
| CAMELIA SEGURA; | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## COMPLAINT

## I. PRELIMINARY STATEMENT

1.     Plaintiff is a female guest worker from Mexico who was brought to the United

States through the federal government's H-2A guest agricultural worker program to work in

Defendants' blueberry and pine straw harvesting operations in Baxley, Georgia, in 2015, 2017,

and 2018.

2.     Plaintiff was charged illegal recruitment fees, coerced to work in the employers'

Taqueria and store for little to no pay, and subjected to forced labor, substandard living

conditions, and emotional abuse. She also suffered significant economic losses arising out of

Defendants' misrepresentations directed at her and at the U.S. and Georgia Departments of

Labor. She was also discriminated against in her employment because of her sex.

3.      Plaintiff brings this action to vindicate her rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"), 18 U.S.C. §§ 1595, *et seq.*; the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*; the Georgia RICO, O.C.G.A. §§ 16-14-1, *et seq.*, Georgia contract law; and under 26 U.S.C. § 7434 for fraudulent filing of tax information with the Internal Revenue Service ("IRS").

4.      Plaintiff seeks her unpaid wages, statutory liquidated damages, general and special damages, punitive damages, emotional distress damages, damages that arose from Defendants' breaches of contract, treble damages for Plaintiff's pecuniary losses, injunctive relief as permitted by the Georgia RICO, pre- and post-judgment interest, costs, and reasonable attorneys' fees.

## II. JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action pursuant to:

(a)      28 U.S.C. § 1331 (Federal Question);

(b)      29 U.S.C. § 1337 (Interstate Commerce);

(c)      29 U.S.C. § 216(b) (FLSA);

(d)      42 U.S.C. § 2000e-5(f)(1) (Title VII);

(e)      18 U.S.C. § 1595(a) (TVPRA);

(f)      18 U.S.C. § 1964(c) (RICO); and

(g)      28 U.S.C. § 1367 (Supplemental).

6.      On September 18, 2018, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging Defendants discriminated against Plaintiff based on her sex, in violation of Title VII. On August 24, 2019, the EEOC issued a Notice of Right to Sue to Plaintiff. Therefore, this Court has jurisdiction over Plaintiff's Title VII claims.

7.      This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III, Section II of the U.S. Constitution.

8.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)-(d), and S.D. Ga. Local Rule 2.1, because a substantial part of the events or omissions giving rise to the claim occurred in this district and division; and because Defendants' primary places of business are in a county within this district and division.

### III. PARTIES

9.      At all times relevant to this action, Plaintiff was a citizen of Mexico who was admitted into the United States on a temporary basis to work for Defendant City Pinestraw and Harvesting, LLC under the auspices of the H-2A program.[1]

10.     Plaintiff's FLSA consent form is attached as Exhibit A.

11.     At all times relevant to this action, Plaintiff was a "person" within the meaning of that term as defined by the federal RICO, in that Plaintiff was an individual capable of holding a legal or beneficial interest in property.[2]

---

[1] 8 U.S.C. § 1188 and 20 C.F.R. § 655.0, *et seq*.
[2] 18 U.S.C. § 1961(3)

12.     Plaintiff is an aggrieved person as set forth in the Georgia RICO.[3]

13.     Plaintiff is a person who was injured by reason of violations of O.C.G.A.

§ 16-14-4, as set forth in the Georgia RICO.[4]

14.     Defendant City Pinestraw and Harvesting, LLC, ("City Pinestraw"), a Georgia

Limited Liability Company, is an H-2A Labor Contractor ("H2ALC") in that it recruited,

solicited, hired, employed, furnished, housed, and/or transported H-2A workers, and is not a

fixed-site employer, an agricultural association, or an employee of a fixed-site employer or

agricultural association.[5] The registered agent is Francisco Segura, who can be served at

96 Weaver Street, Baxley, GA 331513.

15.     At all times relevant to this action, Defendant City Pinestraw operated in South

Georgia, including in Appling County and Bacon County.

16.     Defendant City Pinestraw's address is in Appling County, Georgia.

17.     According to State of Georgia Secretary of State annual reports, at relevant times

Defendant Maria Camelia Segura and Defendant Francisco Segura alternated as owners,

organizers, and registered agents of City Pinestraw.

18.     The City Pinestraw Articles of Organization list both Maria Camelia Segura and

Francisco Segura as the organizers of City Pinestraw.

19.     Upon information and belief, Maria Camelia Segura and Francisco Segura jointly

own and operate City Pinestraw.

20.     Defendant Francisco Segura is a resident of Appling County, Georgia.

21.     Defendant Maria Segura is a resident of Appling County, Georgia.

---

[3] O.C.G.A. § 16-14-6(b)
[4] O.C.G.A. § 16-14-6(c)
[5] *See* definition of H-2A Labor Contractor at 20 C.F.R. § 655.103.

22.     At all times relevant to this action, Defendants Maria Camelia Segura and Francisco Segura (collectively, "RICO Defendants") were "persons" within the meaning of that term as defined by the federal RICO, in that they were individuals capable of holding a legal or beneficial interest in property.[6]

23.     At all times relevant to this action, the RICO Defendants were "person[s]" who, "through a pattern of racketeering activity or proceeds derived therefrom, … acquire[d] or maintain[ed], directly or indirectly, any interest in or control in or control of any enterprise, real property, or personal property of any nature, including money."[7]

24.     At all times relevant to this action, the RICO Defendants were "person[s] employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity."[8]

25.     Alternatively, at all relevant times, Defendant Francisco Segura committed the acts set forth in paragraphs 23 and 24, *supra*, and Defendant Maria Camelia Segura was a "person" who "conspire[d] or endeavor[ed] to commit the acts set forth in paragraphs 23 and 24.

26.     At all times relevant to this action, City Pinestraw was an enterprise ("the City Pinestraw RICO Enterprise"), within the meaning of 18 U.S.C. § 1961(4) and O.C.G.A. § 16-14-3(3).

27.     At all times relevant to this action, Defendants Francisco Segura and Maria Segura owned and operated—and continue to own and operate—a restaurant and grocery store, called Segura's Taqueria, ("Taqueria"), located at 40 Comas Street, Baxley, GA. The RICO Defendants also operate a money wiring business from this location.

---

[6] 18 U.S.C. § 1961(3)
[7] *See* O.C.G.A. § 16-14-4(a).
[8] *See* O.C.G.A. § 16-14-4(b).

28.     At all times relevant to this action, all Defendants were employers of Plaintiff under the FLSA, in that they suffered or permitted Plaintiff to work.[9]

29.     At all times relevant to this action, all Defendants were employers under Title VII in that Defendants had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, or were agents of such a person.[10]

30.     The RICO Defendants controlled the manner and means by which Plaintiff's work was accomplished.

31.     The RICO Defendants had the power to hire and fire Plaintiff and control the conditions of her employment.

32.     Defendant Francisco Segura was the day-to-day manager of, and had operational control over, Defendant City Pinestraw.

33.     Upon information and belief, Defendant Maria Segura was the day-to-day manager of, and had operational control over, the Taqueria.

34.     Under her employment contracts with Defendant City Pinestraw, Plaintiff was hired to harvest pine straw, blueberries, blackberries, and strawberries, for sale in interstate commerce.

35.     As Defendants' employee, Plaintiff handled or otherwise worked on goods or materials that had been moved in or produced for interstate commerce.

36.     At all times relevant to this action, Defendants were an enterprise engaged in commerce or in the production of goods for commerce because Defendants have employees engaged in commerce or in the production of goods for commerce; employees handling, selling,

---

[9] 29 U.S.C. § 203(g)
[10]  42 U.S.C. § 200e(b).

or otherwise working on goods or materials that have been moved in or produced for commerce; and, in 2018 Defendants operated an interstate and international money wiring business.

37.     Upon information and belief, Defendants are an enterprise whose annual gross volume of sales or business done is not less than $500,000.

## IV. STATUTORY AND REGULATORY STRUCTURE OF THE H-2A PROGRAM

38.     An agricultural employer in the United States may bring temporary foreign workers ("H-2A workers") to the United States if the United States Department of Labor ("USDOL") certifies that (1) there are not enough U.S. workers to perform the job, and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed.[11] These provisions, along with the implementing federal regulations, are commonly referred to as the "H-2A program."

39.     Under the H-2A program, employers must file a temporary labor certification application with the USDOL's Employment and Training Administration. 20 C.F.R. § 655.130.

40.     The employer filing a temporary labor certification application also must sign an attestation (Form ETA 9142A, Appendix A) declaring, inter alia, that

(a)     "the employer understands that it must offer, recruit at, and pay a wage that is at least the highest of the adverse effect wage rate at the time the job order is placed, the prevailing hourly or piece rate, the agreed-upon collective bargaining rate (CBA), or the Federal or State minimum wage…."  Form ETA-9142A, Appendix A at ¶ B(5).

(b)     "the employer … [w]ill comply with applicable Federal, State and local employment-related laws and regulations…."  *Id.* at ¶ B(8).

---

[11]   8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1)

(c)      "The employer and its agents have not sought or received payment of any kind from the H-2A worker for any activity related to obtaining labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs. For purposes of this paragraph, payment includes, but is not limited to, monetary payments, wage concessions (including deductions from wages, salary, or benefits), kickbacks, bribes, tributes, in kind payments, and free labor." *Id.* at ¶ B(10).

(d)      "The employer has and will contractually forbid any foreign labor contractor or recruiter whom the employer engages in international recruitment of H-2A workers to seek or receive payments from prospective employees, except as provided for in DHS regulations."

41.      The employer signing the attestation set forth in paragraph 40 declares, under penalty of perjury, that "the information contained therein is true and accurate."

42.      The application must include a job offer, known as a "Job Order," which is used in the recruitment of both U.S. and H-2A workers and becomes the work contract of the employed workers.[12]

43.      The employer submits the Job Order to the State Workforce Agency ("SWA") in the state where the work will be performed.

44.      In Georgia, the SWA is the Georgia Department of Labor ("GADOL").

45.      If an employer's Job Order appears to meet the minimum federal regulatory requirements and otherwise appears valid, the SWA approves the Job Order, and U.S. worker availability is tested by use of the interstate Employment Service system[13] and by the employer's

---

[12] See 20 C.F.R. § 655.103(b) (definition of "work contract")

[13] Employment Service (ES) refers to the national system of public ES offices described under the Wagner-Peyser Act. Employment services are delivered through a nationwide system of one-stop centers and are managed by State

own hiring efforts. If it is determined that sufficient U.S. workers are not available to fill the jobs, the USDOL certifies the need for temporary foreign workers, and the Department of Homeland Security issues H-2A visas for the number of job opportunities requested by the employer and not filled by U.S. workers.

46.     The job order must comply with the applicable H-2A regulations that establish the minimum benefits, wages, and working conditions which must be offered in order to avoid adversely affecting similarly employed U.S. workers.[14]

47.     The H-2A regulations require, in part, the following:

(a)     If the worker is paid by the hour, the employer must pay the worker at least the Adverse Effect Wage Rate ("AEWR"), or the Federal or State minimum wage rate, in effect at the time work is performed, whichever is highest, for every hour or portion thereof worked during a pay period.[15]

(b)     If the worker is paid on a piece rate basis and the worker's earnings do not result in average earnings of at least the AEWR, then the worker's pay must be supplemented so that the worker's earnings are at least as much as the worker would have earned had the worker been paid the AEWR.[16]

(c)     The employer must provide housing to the workers, free of charge, and the housing must meet federal standards.[17]

---

Workforce Agencies (SWA's), and funded by the USDOL. *See* 20 C.F.R. § 651.10, (definition of "Wagner-Peyser Act Employment Service").

[14] 20 C.F.R. § 655.121(a)(3)
[15] 20 C.F.R. § 655.122(l)
[16] 20 C.F.R. § 655.122(l)(2)(i)
[17] 20 C.F.R. § 655.122(d)

(d)     The employer must keep accurate and adequate records with respect to the workers' earnings, including but not limited to: field tally records, supporting summary payroll records, and records showing the nature and amount of the work performed; the number of hours of work offered each day by the employer; the hours actually worked each day by the worker; the time the worker began and ended each workday; the rate of pay (both piece rate and hourly, if applicable); the worker's earnings per pay period; the worker's home address; and the amount of and reasons for any and all deductions taken from the worker's wages.[18]

(e)     The employer must furnish to each worker, on or before each payday, a written statement that includes, among other items: the worker's total earnings for the pay period; the worker's hourly rate and/or piece rate of pay; the hours of employment offered; the hours actually worked by the worker; an itemization of all deductions made from the worker's wages; and, if piece rates are used, the units produced daily.[19]

## V. STATEMENT OF FACTS

<u>Representations Regarding Plaintiff's Employment</u>

### A. 2015 Job Order

48.     On or about February 15, 2015, the RICO Defendants, through the City Pinestraw RICO Enterprise, submitted a Job Order (hereinafter, "the 2015 Job Order") to the GADOL and an Application for Temporary Employment Certification, (hereinafter, "the 2015 Application for Certification"), to the USDOL.

---

[18] 20 C.F.R. § 655.122(j)(1)
[19] 20 C.F.R. § 655.122(k)

49.     On or about February 15, 2015, Defendant Francisco Segura, through the City Pinestraw RICO Enterprise, signed the "Employer's Certification" in the 2015 Job Order.

50.     The "Employer's Certification" certified that the 2015 Job Order "describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job."

51.     The terms and conditions set forth in the 2015 Job Order (attached as Ex. B) included the following:

(a)     A prohibition against employers and their agents from seeking or receiving payment from any worker for application fees and recruitment costs.[20]

(b)     Work to begin on April 20, 2015 and continue until July 31, 2015.

(c)     Anticipated hours of work of at least 35 hours per week.

(d)     Job duties to include harvesting blueberries.

(e)     An hourly wage of not less than the AEWR,[21] or $10.00 per hour, and a piece rate of $0.50 per pound.

(f)     Weekly pay period, with wages to be paid every Saturday.

(g)     Free housing that met local, state and federal requirements, including adequate kitchen facilities to allow workers to cook their own meals.

52.     In reliance of Defendant Francisco Segura's certification, the GADOL approved the 2015 Job Order.

53.     The approved 2015 Job Order included, but was not limited to, the terms set forth in paragraph 51, *supra*.

---

[20] 20 C.F.R. § 655.135(j)
[21] The applicable adverse effect wage rate ("AEWR") for 2015 was $10.00 per hour, see 79 Fed. Reg. 75839 (Dec. 19, 2014).

54.     On or about February 15, 2015, Defendant Francisco Segura, through the City Pinestraw RICO Enterprise, signed Form ETA 9142A, Appendix A of the 2015 Application for Certification, wherein he declared, under penalty of perjury, that City Pinestraw would pay employees at least the AEWR, that City Pinestraw would "comply with Federal, State, and Local employment-related laws and regulations;" City Pinestraw and its agents had not "sought or received payment of any kind from the H-2A worker for any activity related to obtaining labor certification;" and that City Pinestraw had and would forbid foreign labor contractors and recruiters from receiving payments from prospective H-2A workers.

55.     USDOL reviewed and, in reliance on Defendant Francisco Segura's attestation, ultimately certified Defendant City Pinestraw's 2015 Application for Certification, allowing City Pinestraw to import H-2A workers, including Plaintiff, to fill the labor needs set out in their temporary labor certification application.

56.     Defendant Francisco Segura, through the City Pinestraw Enterprise, used the mail and/or wires to transmit the 2015 Application for Certification, the 2015 Job Order, and related materials between himself, the GADOL, and USDOL.

57.     Defendant Francisco Segura, through the City Pinestraw Enterprise, used the mail and/or wires in furtherance of his scheme to provide false information to the GADOL and USDOL.

58.     On behalf of Defendants, Plaintiff was recruited in her hometown in Mexico, to work for Defendant City Pinestraw under the terms of the 2015 Job Order.

59.     On or about April 2015, Francisco Segura or his agent, through the City Pinestraw RICO Enterprise, transmitted the 2015 Job Order to Plaintiff through the mail or wires.

60.     Plaintiff, relying on Francisco Segura's representations in the 2015 Job Order, accepted the job offer on or about April 27, 2015.

61.     The terms and conditions of the 2015 Job Order, together with the requirements of 20 C.F.R. § 655, constituted a job offer.

62.     Plaintiff accepted the offer of employment under the terms of the 2015 Job Order.

63.     This job offer contained in the 2015 Job Order, when Plaintiff accepted it, created a work contract between Defendant City Pinestraw and Plaintiff.

64.     The work contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws" including the FLSA and the TVPRA.[22]

65.     By promising to pay the federally-mandated wage rate, Defendant City Pinestraw also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing the workers' wages by shifting costs to those workers.

## B. 2017 Job Order

66.     In January or February 2017, the RICO Defendants, through the City Pinestraw RICO Enterprise submitted a job order (hereinafter, "the 2017 Job Order") to the GADOL and an Application for Temporary Employment Certification, (hereinafter, "the 2017 Application for Certification"), to the USDOL.

67.     In January or February 2017, Defendant Francisco Segura, through the City Pinestraw RICO Enterprise, signed the "Employer's Certification" in the 2017 Job Order.

---

[22] 20 C.F.R. § 655.135(e)

68.     The "Employer's Certification" certified that the 2017 Job Order "describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job."

69.     The terms and conditions set forth in the 2017 Job Order (attached as Ex. C) were substantially similar to the terms and conditions in the 2017 Job Order, with the following exceptions:

      (a)     Work to begin on March 15, 2017 and continue until August 15, 2017.

      (b)     Anticipated hours of work of at least 35 hours per week.

      (c)     Job duties to include harvesting blueberries and blackberries.

      (d)     An hourly wage of not less than the AEWR of $10.62 per hour[23], and a piece rate of $0.50 per pound.

70.     When Defendant Francisco Segura signed the "Employer Certification" in the 2017 Job Order, he knew some of the representations were false.

71.     Defendants Francisco Segura knew City Pinestraw and its agents would seek and receive application fees and recruitment costs from Plaintiff and other H-2A workers.

72.     Defendant Francisco Segura knew City Pinestraw would not pay an hourly wage of at least the AEWR of $10.62 per hour.

73.     Defendant Francisco Segura knew Plaintiff would not work in agriculture.

74.     In reliance on Defendant Francisco Segura's false representations in the 2017 Job Order, the GADOL approved the 2017 Job Order.

---

[23]  The applicable adverse effect wage rate ("AEWR") for 2017 was $10.62 per hour, see 81 Fed. Reg. 94422 (Dec. 23, 2016).

75.     The approved 2017 Job Order included, but was not limited to, the terms set forth in paragraph 69, *supra*.

76.     In January or February 2017, Defendant Francisco Segura, through the City Pinestraw RICO Enterprise, signed Form ETA 9142A, Appendix A of the 2017 Application for Certification, wherein he declared, under penalty of perjury, that City Pinestraw would pay employees at least the AEWR, that City Pinestraw would "comply with Federal, State, and Local employment-related laws and regulations;" City Pinestraw and its agents had not "sought or received payment of any kind from the H-2A worker for any activity related to obtaining labor certification;" and that City Pinestraw had and would forbid foreign labor contractors and recruiters from receiving payments from prospective H-2A workers.

77.     Defendant Francisco Segura knew the statements he swore to, under penalty of perjury, in the Form ETA 9142A, Appendix A of the 2017 Application for Certification, were false.

78.     Defendant Francisco Segura knew he would not pay Plaintiff and other H-2A workers the AEWR in 2017.

79.     Defendant Francisco Segura knew City Pinestraw would not comply with federal, state, and local statutes and regulations with respect to mandatory minimum wages, charging and reimbursing pre-employment fees and costs, housing conditions, and the requirement that H-2A workers only be employed in agriculture.

80.     Upon information and belief, Defendant Francisco Segura knew City Pinestraw's agents had sought and received, or would seek and receive, payments from Plaintiff and other H-2A workers for activities related to labor certification, and that he did not forbid foreign labor recruiters from receiving these payments.

15

81.     Defendant Francisco Segura knew Plaintiff would not work in agriculture, in violation of federal law.

82.     USDOL reviewed and, in reliance on Defendant Francisco Segura's false attestation, ultimately certified Defendant City Pinestraw's 2017 Application for Certification, allowing City Pine Straw to import H-2A workers, including Plaintiff, to fill the labor needs set out in their temporary labor certification application.

83.     The RICO Defendants, though the City Pinestraw RICO Enterprise, used the mail and/or wires to transmit the 2017 Application for Certification, the 2017 Job Order, and related materials between himself, the GADOL, and USDOL.

84.     The RICO Defendants, through the City Pinestraw RICO Enterprise, used the mail and/or wires in furtherance of their scheme to provide false information to the USDOL and the GADOL.

85.     On behalf of the RICO Defendants, Plaintiff was recruited in her hometown in Mexico, to work for Defendant City Pinestraw under the terms of the 2017 Job Order.

86.     On or about April 2017, the RICO Defendants or their agent, through the City Pinestraw RICO Enterprise, transmitted the 2017 Job Order to Plaintiff through the mail and wires.

87.     The RICO Defendants offered employment to Plaintiff and provided her with the 2017 Job Order only one day before she was required to leave her home to come to the United States for employment with Defendants.

88.     When the RICO Defendants or their agent transmitted the 2017 Job Order to Plaintiff, they knew Defendant City Pinestraw would not comply with its terms, as set forth in ¶ 69, *supra.*

16

89.    Plaintiff, relying on Francisco Segura's misrepresentations in the 2017 Job Order, accepted the job offer on or about April 25, 2017.

90.    The USDOL, the GADOL, and Plaintiff relied on the misrepresentations in the 2017 Job Order and the 2017 Application for Certification, and, as a consequence, Plaintiff suffered pecuniary losses consisting of unpaid wages and unreimbursed pre-employment fees and costs.

91.    The terms and conditions of the 2017 Job Order, together with the requirements of 20 C.F.R. § 655, constituted a job offer.

92.    Plaintiff accepted the offer of employment under the terms of the 2017 Job Order.

93.    This job offer contained in the 2017 Job Order, when Plaintiff accepted it, created a work contract between Defendant City Pinestraw and Plaintiff.

94.    The work contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws" including the FLSA and the TVPRA.[24]

95.    By promising to pay the federally mandated wage rate, Defendant City Pinestraw also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing the workers' wages by shifting costs to those workers.

### C. 2018 Job Order

96.    On or about February 2, 2018, the RICO Defendants, through the City Pinestraw RICO Enterprise submitted a job order (hereinafter, "the 2018 Job Order") to the GADOL and an Application for Temporary Employment Certification, (hereinafter, "the 2018 Application for Certification"), to the USDOL.

_____

[24] 20 C.F.R. § 655.135(e)

17

97.     On or about January 24, 2018, Defendant Francisco Segura, through the City Pinestraw RICO enterprise, signed the "Employer's Certification" in the 2018 Job Order.

98.     The "Employer's Certification" certified that the 2018 Job Order "describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job."

99.     The terms and conditions set forth in the 2018 Job Order (attached as Ex. D) were substantially similar to the terms and conditions in the 2015 Job Order, with the following exceptions:

(a)     Work to begin on February 28, 2018 and continue until October 20, 2018.

(b)     Job duties to include harvesting blueberries, blackberries, strawberries, and pine straw.

(c)     An hourly wage of not less than the AEWR,[25] or $10.95 per hour, and a piece rate of $0.50 per pound of blueberries, $3.00 per box of strawberries and blackberries, and $0.85 per bale of pine straw.

100.    When Defendant Francisco Segura signed the "Employer Certification" in the 2018 Job Order, he knew some of the representations were false.

101.    Defendants Francisco Segura knew City Pinestraw and its agents would seek and receive application fees and recruitment costs from Plaintiff and other H-2A workers.

102.    Defendant Francisco Segura knew City Pinestraw would not pay an hourly wage of at least the AEWR of $10.95 per hour.

103.    Defendant Francisco Segura knew Plaintiff would not work in agriculture.

---

[25] The applicable adverse effect wage rate ("AEWR") for 2018 was $10.95 per hour, see 82 Fed. Reg. 60628 (Jan. 4, 2018).

104.    In reliance on Defendant Francisco Segura's false representations in the 2018 Job Order, the GADOL approved the 2018 Job Order.

105.    The approved 2018 Job Order, included, but was not limited to, the terms set forth in ¶ 99, *supra*.

106.    On or about February 2, 2018, Defendant Francisco Segura, through the City Pinestraw RICO Enterprise, signed Form ETA 9142A, Appendix A of the 2018 Application for Certification, wherein he declared, under penalty of perjury, that City Pinestraw would pay employees at least the AEWR, City Pinestraw would "comply with Federal, State, and Local employment-related laws and regulations;" City Pinestraw and its agents had not "sought or received payment of any kind from the H-2A worker for any activity related to obtaining labor certification;" and that City Pinestraw had and would forbid foreign labor contractors and recruiters from receiving payments from prospective H-2A workers.

107.    Defendant Francisco Segura knew the statements he swore to, under penalty of perjury, in the Form ETA 9142A, Appendix A of the 2018 Application for Certification, were false.

108.    Defendant Francisco Segura knew he would not pay Plaintiff and other H-2A workers the AEWR in 2018.

109.    Defendant Francisco Segura knew City Pinestraw would not comply with federal, state, and local statutes and regulations with respect to mandatory minimum wages, charging and reimbursing pre-employment fees and costs, housing conditions, and the requirement that H-2A workers only be employed in agriculture.

110.    Upon information and belief, Defendant Francisco Segura knew City Pinestraw's agents had sought and received, or would seek and receive, payments from Plaintiff and other

H-2A workers for activities related to labor certification, and that he did not forbid foreign labor recruiters from receiving these payments.

111.   Defendant Francisco Segura knew Plaintiff would not work in agriculture, in violation of federal law.

112.   USDOL reviewed and, in reliance on Defendant Francisco Segura's false attestation, ultimately certified Defendant City Pinestraw's 2018 Application for Certification, allowing City Pine Straw to import H-2A workers, including Plaintiff, to fill the labor needs set out in their temporary labor certification application.

113.   The RICO Defendants, though the City Pinestraw RICO Enterprise, used the mail and/or wires to transmit the 2018 Application for Certification, the 2018 Job Order, and related materials between himself and the USDOL.

114.   The RICO Defendants, through the City Pinestraw RICO Enterprise, used the mail and/or wires in furtherance of their scheme to provide false information to the USDOL.

115.   The approved 2018 Job Order, included, but was not limited to, the terms set forth in paragraph 99, *supra*.

116.   On behalf of the RICO Defendants, Plaintiff was recruited in her hometown in Mexico, to work for Defendant City Pinestraw under the terms of the 2018 Job Order.

117.   Plaintiff, relying on Francisco Segura's misrepresentations in the 2018 Job Order, accepted the job offer on or about March 19, 2018.

118.   The USDOL, the GADOL, and Plaintiff relied on the misrepresentations in the 2018 Job Order and the 2018 Application for Certification, and, consequently, Plaintiff suffered pecuniary losses consisting of unpaid wages and unreimbursed pre-employment fees and costs.

119.    The terms and conditions of the 2018 Job Order, together with the requirements of 20 C.F.R. § 655, constituted a job offer.

120.    Plaintiff accepted the offer of employment under the terms of the 2018 Job Order.

121.    The job offer contained in the 2018 Job Order, when Plaintiff accepted it, created a work contract between Defendant City Pinestraw and Plaintiff.

122.    The work contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws" including the FLSA and the TVPRA. See 20 C.F.R. § 655.135(e).

123.    By promising to pay the federally-mandated wage rate, Defendant City Pinestraw also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing the workers' wages by shifting costs to those workers.

<u>Pre-Employment Expenses</u>

124.    Through an intermediary, Defendants recruited workers in Mexico, and required, as a condition of hire, that Plaintiff pay a sum of money for travel to Georgia, visa expenses, and recruitment fees.

125.    For all three seasons, in addition to the fees paid directly to Defendants, Plaintiff also paid for:

(a)    Travel from her hometown in Mexico to the U.S. Consulate in Monterrey, Mexico, for the interview necessary to obtain an H-2A visa;

(b)    Visa fee and a "lawyer fee" for the process to obtain an H-2A visa; and

(c)    Lodging, meals, and transportation expenses in Monterrey, Mexico, to complete the forms necessary for her visa applications, attended her consular interviews, and wait for the visa applications to be processed and for the visas to be issued.

21

(d)      Travel from Monterrey, Mexico to Baxley, Georgia.

126.    For all three seasons, the expenses described in paragraph 124 and 125 were costs necessary to enter the U.S. as an H-2A worker and were incurred for the benefit of Defendants, as defined by 29 C.F.R. §§ 531.32(c) and 778.217.

127.    For all three seasons, the expenses described in paragraphs 124 and 125 were made before receipt of Plaintiff's first paycheck.

128.    For all three seasons, Defendants only reimbursed Plaintiff for a small portion of the expenses described in paragraphs 124 and 125.

129.    For all three seasons, Defendants' failure to reimburse Plaintiff for these expenses brought Plaintiff's first week wages below the federal minimum wage and the AEWR.

130.    For all three seasons, the expenses Plaintiff paid as described in paragraphs 124 and 125 were contrary to Defendant Francisco Segura's sworn declaration, through the City Pinestraw RICO Enterprise, to USDOL in the respective season's Application for Certification— and the certification to the GADOL in the respective season's Job Order—that (a) City Pinestraw and its agents had not sought and received, or would not seek and receive, payments from Plaintiff and other H-2A workers for activities related to labor certification, and (b) that City Pinestraw would forbid foreign labor recruiters from receiving these payments.

<u>Wages and Working Conditions</u>

**A. 2015 Season**

131.    In the 2015 season, Plaintiff worked for Defendants City Pinestraw and Francisco Segura harvesting blueberries and working in the packinghouse.

132.    Defendants did not allow Plaintiff to have a lunch break while working.

133.    When harvesting blueberries, Plaintiff was paid solely on a piece-rate basis, such that she was paid according to the number of pounds of blueberries gathered, without regard to the number of hours worked.

134.    During multiple workweeks, Plaintiff's weekly earnings fell below the contractually promised wage of $10.00 per hour.

135.    Defendants did not supplement Plaintiff's weekly earnings to ensure that she received the wages required by the FLSA and her employment contract.

136.    Defendants' failure to pay the wages required by the FLSA and the employment contract were contrary to Defendant Francisco Segura's sworn declaration to USDOL in 2015 Labor Certification and representations to the GADOL and to Plaintiff in the 2015 Job Orders that City Pinestraw would pay the AEWR of $10.00 per hour.

137.    Defendants failed to make, keep, preserve, and retain accurate employment records, as required by the FLSA,[26] and by the H-2A regulations.[27]

138.    Defendants did not provide Plaintiff with complete and regular earning statements containing the information required by the H-2A regulations.[28]

## B. 2017 Season

139.    In the 2017 season, Plaintiff worked for Defendants, in the Taqueria. Plaintiff was tasked with various duties, including but not limited to, cooking, cleaning, and managing the restaurant's inventory.

140.    The RICO Defendants knowingly abused the H-2A program by ordering Plaintiff to perform work that was non-agricultural, including as a cook and manager in Defendants'

---

[26] 29 C.F.R. § 516.2(a)
[27] 20 C.F.R. § 655.122(j)
[28] 20 C.F.R. § 655.122(k)

23

Taqueria. Such work was not within the scope of Plaintiff's H-2A contract and was in violation of the H-2A regulations.

141.    The RICO Defendants' requirement that Plaintiff work in the Taqueria was contrary to Defendant Francisco Segura's sworn declaration to USDOL in the 2017 Labor Certification and representations to the GADOL and to Plaintiff in the 2017 Job Order that she would be employed as an agricultural laborer.

142.    Plaintiff worked more than 40 hours weekly throughout the course of the 2017 season, with no rest days and no holidays.

143.    Defendants did not allow Plaintiff any lunch breaks during this period.

144.    Defendants did not pay Plaintiff any wages for her first and second weeks of work.

145.    Plaintiff's weekly earnings fell below the applicable federal minimum wage.

146.    Plaintiff's weekly earnings fell below the contractually promised wage of $10.65 per hour.

147.    Defendants did not supplement Plaintiff's weekly earnings to ensure that she received the wages required by the FLSA and her employment contract.

148.    Defendants failed to compensate Plaintiff at one and a half times the regular rate of pay for the hours she worked in excess of 40 during a workweek.

149.    Defendants failed to make, keep, preserve, and retain accurate employment records, as required by the FLSA, and by the H-2A regulations.

150.    Defendants did not provide Plaintiff with complete and regular earning statements containing the information required by the H-2A regulations.

151.     The RICO Defendants' acts and omissions described in paragraphs 139-150, *supra*, were contrary to Defendant Francisco Segura's sworn declaration to USDOL in the 2017 Labor Certification and representations to the GADOL and to Plaintiff in the 2017 Job Order.

152.     To the extent Defendant Maria Camelia Segura did not directly commit the acts and omissions described in paragraphs 139-150, *supra*, she conspired with Defendant Francisco Segura by knowingly providing support to the violations of his sworn declaration to USDOL in the 2017 Application for Certification and representations to the GADOL and to Plaintiff in the 2017 Job Order.

### C. 2018 Season

153.     On or about March 2018, as Plaintiff was being recruited and, prior to traveling to Georgia for the 2018 contract, Plaintiff spoke with Defendant Francisco Segura's daughter, Sarahy Segura, who was a supervisor in the City Pinestraw RICO Enterprise. During that conversation, Plaintiff stated that she wanted to work in the fields doing agricultural work, and she did not want to work in the Taqueria.

154.     In the 2018 season, the RICO Defendants again abused the H-2A program and violated the sworn declaration in the 2018 Application for Certification and the certification in the 2018 Job Order by ordering Plaintiff, and other female H-2A workers, to work in their Taqueria.

155.     By the time Plaintiff arrived in Georgia for the 2018 season, the RICO Defendants had added a convenience store and money wiring services to their Taqueria.

156.     The RICO Defendants ordered Plaintiff to work both in the Taqueria and the store throughout the entirety of her 2018 contract period.

25

157.    In the 2018 season, Plaintiff was tasked with various duties in the Taqueria and attached store, including but not limited to, opening and closing the premises, managing inventory, managing the cash register, processing money wiring transactions for customers, cooking, and waiting tables.

158.    The work Plaintiff was ordered to do was contrary to the job duties described in the 2018 Job Order and was in violation of the H-2A program.

159.    The RICO Defendants' requirement that Plaintiff work in the Taqueria was contrary to the sworn declaration to USDOL in the 2018 Labor Certification and representations to the GADOL and to Plaintiff in the 2018 Job Order that she would be employed as an agricultural laborer.

160.    Plaintiff worked more than 40 hours weekly throughout the course of the 2018 season, with few rest days and no holidays.

161.    The RICO Defendants did not allow Plaintiff any lunch breaks until August 16, 2018, after a member of the community complained to the owners about the conditions in which Plaintiff was working.

162.    The RICO Defendants did not consistently pay Plaintiff for her labor as required by the FLSA and her employment contract.

163.    Plaintiff frequently went two or more consecutive weeks without receiving any wages.

164.    On one occasion, Plaintiff went almost three weeks without receiving any wages and then only received a payment of 50 dollars the third week.

165.    Plaintiff's weekly earnings fell below the applicable federal minimum wage.

166.    Plaintiff's weekly earnings fell below the contractually promised wage of $10.95 per hour.

167.    Defendants did not supplement Plaintiff's weekly earnings to ensure that she received the wages required by the FLSA and her employment contract.

168.    Defendants failed to compensate Plaintiff at one and a half times the regular rate of pay for the hours she worked in excess of 40 during a workweek.

169.    Defendants failed to make, keep, preserve, and retain accurate employment records, as required by the FLSA, and by the H-2A regulations.

170.    Defendants did not provide Plaintiff with complete and regular earning statements containing the information required by the H-2A regulations.

171.    The RICO Defendants' acts and omissions described in paragraphs 154-170, *supra*, were contrary to the sworn declaration to USDOL in the 2018 Labor Certification and representations to GADOL and to Plaintiff in the 2018 Job Order.

172.    To the extent Defendant Maria Camelia Segura did not directly commit the acts and omissions described in paragraphs 154-170, *supra*, she conspired with Defendant Francisco Segura by knowingly providing support to the violations of his sworn declaration to USDOL in the 2018 Application for Certification and representations to the GADOL and to Plaintiff in the 2018 Job Order.

<u>Human Trafficking Scheme</u>

173.    The RICO Defendants' human trafficking scheme took place during the 2017 and 2018 seasons.

174.    Plaintiff is poor and from an impoverished community with limited employment opportunities. The RICO Defendants, through an intermediary, recruited Plaintiff from her hometown in Mexico.

175.    In the 2017 season, the RICO Defendants knowingly kept Plaintiff beyond the expiration of her visa. When Plaintiff asked the RICO Defendants about their requirement that she work beyond the expiration of her visa, the RICO Defendants said that Plaintiff would not face any legal repercussions as long as she continued to work for Defendants. Plaintiff reasonably interpreted this as a threat.

176.    Plaintiff had to take out loans at a 20 percent interest rate to cover for the pre-employment fees and costs Plaintiff had to pay to work for the RICO Defendants in 2017 and 2018.

177.    If Plaintiff left her employment with the RICO Defendants, she would not have been able to pay off her loans.

178.    In the 2017 and 2018 season, Plaintiff lived in a small two-bedroom, one-bathroom house next to the RICO Defendants' office.

179.    In 2018, Plaintiff lived in this home with five other women.

180.    The house had no working air conditioning system and the windows were sealed shut.

181.    The only way Plaintiff could keep the temperature in the house from becoming unbearable was by leaving the doors open, which made her feel unsafe while she was trying to sleep.

182.    The RICO Defendants provided Plaintiff with no choice but to live in this inhumane housing, though she wanted to live in safe and secure housing.

183.    The RICO Defendants knowingly confiscated Plaintiff's passport, visa, and social security card to prevent Plaintiff from leaving.

184.    To prevent Plaintiff from leaving, Defendant Francisco Segura made threats in the presence of Plaintiff about calling immigration on other workers who chose to leave the employment of Defendant.

185.    Defendants' daughter, Sarahy Segura, on several occasions reminded Plaintiff that she had a handgun in her purse and knew how to use it.

186.    The RICO Defendants did not permit Plaintiff to make personal calls during work hours.

187.    The RICO Defendants did not permit Plaintiff to befriend customers at the Taqueria. If the RICO Defendants saw Plaintiff speaking with a customer for more than the minimal amount of time for the transaction, they would approach Plaintiff and eavesdrop on the conversation.

188.    On December 11, 2017, Plaintiff went to a Mass at 4:00 a.m., during non-work hours. Sarahy Segura reprimanded Plaintiff for attending the Mass, telling her she was there (in Georgia) to work, and she had no right to attend religious events.

189.    On another occasion, a Jehovah's Witness came to the Taqueria and asked Plaintiff if she was interested in attending a spiritual retreat. Plaintiff told the Jehovah's Witness

she was not allowed to go out anywhere. When the Jehovah's Witness asked Sarahy Segura about this, Sarahy Segura became upset and said Taqueria employees were there to work and could not attend outside events.

190.    During the 2018 season, Defendants fired the U.S. workers that were working at Defendants' Taqueria and replaced them with Plaintiff and other female H-2A workers.

191.    During the 2018 season, when Plaintiff asked to work in the field along the other agricultural workers, Defendant Maria Segura yelled at her. Among other angry statements, Defendant Maria Segura told Plaintiff that she was "dead to her." Plaintiff reasonably viewed this as a threat.

192.    One morning, during the 2018 season, Plaintiff fell severely ill with fever, body aches, a strong headache, and a runny nose, and asked Defendants to let her take the day off to rest. Defendants refused and Sarahy Segura went to Plaintiff's housing to order her to get back to work. Plaintiff was forced to work that day at the Taqueria even though she was very ill.

193.    During the 2018 season, Plaintiff made a complaint to the USDOL.

194.    After the complaint was lodged with the USDOL, the RICO Defendants required Plaintiff to eat lunch with the managers of the kitchen. Plaintiff believes that this was done to ensure that she could not communicate with the USDOL during her lunch break.

195.    During the 2018 season, the RICO Defendants temporarily moved Plaintiff and other workers to undisclosed locations to hide them from the USDOL investigators, and to prevent the USDOL investigators from interviewing Plaintiff.

196.    For the 2017 and 2018 seasons, the RICO Defendants, through the City Pinestraw RICO Enterprise, obtained the labor of Plaintiff knowingly and intentionally making a series of false statements to the U.S. government as part of their application for participation in the H-2A

30

program including certifying that Plaintiff and other workers would engage in farm labor through the contract period.

197.    For the 2017 and 2018 seasons, the RICO Defendants, through the City Pinestraw RICO Enterprise, obtained the labor of Plaintiff by knowingly and intentionally making a series of false statements to the USDOL and GADOL as part of their application for participation in the H-2A program, including certifying that Plaintiff and other workers would work 35 hours a week and not be required to work on Sundays or holidays.

198.    As a result of Defendants' abusive and illegal conduct against Plaintiff, Plaintiff suffered financial harm and severe emotional distress.

<u>Employment Discrimination</u>

199.    In 2017 and 2018, Defendants required Plaintiff to work in the Taqueria.

200.    Among the H-2A workers Defendants employed, only the women were required to work in the Taqueria. All of H-2A workers who were men worked in agriculture.

201.    None of the H-2A workers who were men worked in the Taqueria.

202.    Defendants paid the men working in agriculture higher wages than to the women they forced to work in the Taqueria.

203.    Defendants paid the men working in agriculture their wages regularly on a weekly basis. Defendants did not pay Plaintiff or the other women working in the Taqueria on regular paydays. Instead, Plaintiff and other women working in the Taqueria frequently would go two or more weeks without receiving any wages.

204.    In 2018, Plaintiff asked Defendant Maria Segura if she could work with the men in agriculture. Defendant Maria Segura told Plaintiff she could not work in agriculture.

205.    On September 18, 2018, Plaintiff filed a Charge of Discrimination with the EEOC raising the allegations set forth in the preceding paragraphs.

206.    On May 13, 2020, the EEOC, after investigation, issued a Determination finding as follows:

> The evidence revealed that Charging Party was hired to work in the United States under an H-2A contract as an agricultural worker from late March 2018 through October 20, 2018. The evidence established that Charging Party futilely requested to work in the agricultural fields to earn more wages like similarly situated males. The evidence establishes further that a class of females were treated differently than their male comparators. Respondent's proffered legitimate, non-discriminatory reasons for its actions toward Charging Party and other females do not withstand scrutiny and are pretext for discrimination.
>
> Based upon the above evidence and the record as a whole, there is reasonable cause to conclude that Charging Party and female employees as a class were discriminated against because of their sex, in violation of Title VII.

207.    On August 24, 2020, the EEOC issued a Notice of Right to Sue related to Plaintiff's charge.

### Filing False Informational Returns with the U.S. Internal Revenue Services

208.    Upon information and belief, Defendants filed false information returns with the U.S. Internal Revenue Service ("IRS") in 2017 by misrepresenting the amount of wages they paid Plaintiff.

209.    Upon information and belief, in 2017, Defendants did not report any of the wages Defendants paid to Plaintiff in cash.

210.    Upon information and belief, Defendants filed false information returns with the IRS in 2018 by failing to report Plaintiff's wages entirely.

211.    In 2018, Defendants paid Plaintiff in cash for work Plaintiff performed at Defendants' Taqueria and retail store.

32

212.     In 2018, when Defendants provided Plaintiff with an earnings statement, the earnings statements showed the wages as "1099."

213.     Plaintiff was Defendants' employee throughout 2018.

214.     By classifying Plaintiff's wages as "1099" in 2018, Defendants knowingly and falsely indicated Plaintiff was an independent contractor, rather than an employee.

215.     As such, in 2017 and 2018, the Defendants either did not file IRS Form 941 or other information return, in an attempt to defraud the IRS, or Defendants filed fraudulent information with the IRS with respect to Plaintiff's earnings and withholdings.

Alter-Ego Claims

216.     Defendant City Pinestraw served as a mere alter ego of the RICO Defendants.

217.     The RICO Defendants ignored corporate formalities and used the corporate form to perpetuate fraud by co-mingling City Pinestraw and personal assets; by requiring Plaintiff and other City Pinestraw H-2A workers to work at the RICO Defendants' Taqueria and retail store in direct contravention of federal law; and by using City Pinestraw as a vehicle to defraud Plaintiff and the USDOL.

218.     The RICO Defendants also used City Pinestraw as a subterfuge to permit the RICO Defendants to engage in human trafficking.

219.     Allowing the RICO Defendants to use City Pinestraw to shield them from personal liability for the egregious violations of law they committed would work an injustice on Plaintiff.

## COUNT I: FAIR LABOR STANDARDS ACT- MINIMUM WAGE

### (Against All Defendants; 2017 and 2018 Only)

220.    Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

221.    Plaintiff brings FLSA minimum wage claims against all Defendants for the 2017 and 2018 seasons only.

222.    Defendants failed to pay Plaintiff at least the required federal minimum wage rate of $7.25 for every compensable hour of labor performed in a workweek, in violation of 29 U.S.C. § 206(a).

223.    The violations set forth in this Count resulted, in part, from Defendants' failure to pay Plaintiff any wages for some weeks of work.

224.    The violations set forth in this Count resulted, in part, from Defendants' failure to reimburse the expenses described in paragraph 124-125, which Plaintiff incurred primarily for the benefit of Defendants and brought Plaintiff's earnings below the required minimum wage rate.

225.    The violations set forth in this Count also resulted from Defendants' failure to supplement Plaintiff's wages to equal or exceed the federal minimum wage.

226.    Defendants' FLSA violations were willful as illustrated in paragraphs: 70-73, 77-79, 81, 88, 100-103, 107-109, 111, 140, 144, 161-162, 175, 183-184, 193-194, and 201-202.

227.    As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover the amount of her unpaid wages and an equal amount as liquidated damages for each workweek in which she earned less than the applicable minimum wage.[29]

---

[29] 29 U.S.C. § 216(b)

## COUNT II: FAIR LABOR STANDARDS ACT- OVERTIME

### (Against All Defendants; 2017 and 2018 Only)

228.    Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

229.    Plaintiff brings FLSA overtime claims against all Defendants for the 2017 and 2018 seasons only.

230.    As stated in paragraphs 150 and 168, Defendants failed to pay Plaintiff at least the required hourly wage of one and a half times the regular rate of compensation for every compensable hour of labor performed in a workweek in excess of 40 hours.[30]

231.    The violations set forth in this Count resulted, in part, from Defendants' failure to compensate Plaintiff for the first and second week of work as described in paragraph 146.

232.    The violations set forth in this Count resulted, in part, from Defendants' failure to compensate Plaintiff for all hours of work as described in paragraphs 146-149, and 162-165.

233.    Defendants' FLSA violations were willful as illustrated in paragraphs: 70-73, 77-79, 81, 88, 100-103, 107-109, 111, 140, 144, 161-162, 175, 183-184, 193-194, and 201-202.

234.    As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover the amount of her unpaid overtime compensation and an equal amount as liquidated damages for each workweek in which she was suffered or permitted to work at Defendants' operations and during which she was not compensated at one and one-half her regular rate for hours worked in excess of 40.[31]

---

[30] 29 U.S.C. § 207(a)
[31] 29 U.S.C. § 216(b)

## COUNT III: BREACH OF CONTRACT – WAGE PROVISIONS

### (All Defendants; 2015, 2017, and 2018)

235.    Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

236.    Plaintiff brings breach of contract claims for violations of the wage provisions of her employment contract against all Defendants for the 2015, 2017, and 2018 seasons.

237.    Defendants offered employment on the terms and conditions set out in the Job Orders.

238.    Plaintiff accepted Defendants' offers.

239.    Among the terms that Defendants offered, and Plaintiff accepted, were promises to:

(a)    Pay the applicable AEWR for each hour worked.[32]

(b)    Pay Plaintiff weekly.

(c)    Furnish to Plaintiff on each pay period a written earning statement accurately showing, among other things, the total earnings for the pay period, hourly rate and piece rate of pay, hours actually worked, and the units produced each day.[33]

240.    In the 2015 season, Defendants failed to pay Plaintiff at least the AEWR of $10.00 per hour.

241.    In the 2017 season, Defendants failed to pay Plaintiff at least the AEWR of $10.65 per hour.

---

[32] 20 C.F.R. § 655.122(l)
[33] 20 C.F.R. § 655.122(k)

242.     In the 2018 season, Defendants failed to pay Plaintiff at least the AEWR of $10.95 per hour.

243.     Defendants failed to pay Plaintiff on a weekly basis, as required by the contract.

244.     Defendants failed to maintain earning records, in violation of 20 C.F.R. § 655.122(j).

245.     Defendants failed to furnish to Plaintiff on each pay period a written earnings statement, in violation of 20 C.F.R. § 655.122(k).

246.     Defendants, therefore, breached their employment contracts with Plaintiff.

247.     As a direct consequence of Defendants' breaches of Plaintiff's employment contracts, Plaintiff suffered economic injuries.

248.     Defendants are jointly and severally liable to Plaintiff for the damages that arose naturally and according to the usual course of things from Defendants' breaches, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

## COUNT IV: TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2003 – (TVPRA) – FORCED LABOR

### (RICO Defendants; 2017 and 2018)

249.     Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

250.     Plaintiff brings TVPRA forced labor claims against the RICO Defendants for the 2017 and 2018 seasons.

251.     This Count sets forth a claim by Plaintiff against the RICO Defendants under the civil remedies provision of the TVPRA (18 U.S.C. § 1595).

252.    The RICO Defendants knowingly recruited and obtained Plaintiff's labor or services.

253.    The RICO Defendants knowingly attempted to and did threaten Plaintiff with serious harm to obtain the labor and services of Plaintiff, in violation of 18 U.S.C. § 1589(a)(1).

254.    The RICO Defendants knowingly attempted to and did obtain the labor and services of Plaintiff using a scheme, plan, or pattern which, in the totality of the circumstances, was intended to coerce and did coerce Plaintiff to believe that she would suffer serious harm if she were to leave the employ of the RICO Defendants, in violation of 18 U.S.C. § 1589(a)(2).

255.    The RICO Defendants' scheme to isolate Plaintiff, to coerce her to live in conditions causing psychological harm, to give her little or no pay, to limit her outside contacts, to threaten Plaintiff with legal repercussions and with calling immigration if she left her job, to inform Plaintiff that their daughter carried and was willing to use a gun, and to subject her to unlawful discrimination, was designed to convince Plaintiff that she would suffer serious harm if she was to leave the employ of the RICO Defendants.

256.    The RICO Defendants retaliated against Plaintiff for attempts to exercise her legal rights, threatened Plaintiff with deportation, and deceived Plaintiff about the terms of her immigration status in a manner that constitutes an abuse of the legal process under 18 U.S.C. § 1589(a)(3).

257.    As a result of the RICO Defendants' violations as set forth in this count, Plaintiff seeks economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorney's fees.

## COUNT V: TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2003 – (TVPRA) – UNLAWFUL CONDUCT WITH RESPECT TO DOCUMENTS

### (RICO Defendants; 2017 and 2018)

258.    Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

259.    Plaintiff brings the TVPRA unlawful conduct with respect to documents claims against the RICO Defendants for the 2017 and 2018 seasons.

260.    This Count sets forth a claim by Plaintiff against the RICO Defendants under the civil remedies provision of the TVPRA (18 U.S.C. § 1595).

261.    The RICO Defendants knowingly confiscated Plaintiff's passport, visa, and social security card and kept them from her.

262.    The RICO Defendants confiscated these documents in the course of violating 18 U.S.C. § 1589.

263.    The RICO Defendants confiscated these documents with the intent of violating 18 U.S.C. § 1589.

264.    The RICO Defendants knowingly confiscated Plaintiff's documents to prevent or restrict, or to attempt to prevent or restrict, Plaintiff's liberty to move or travel, in order to maintain Plaintiff's labor and services, in violation of 18 U.S.C. §1592.

265.    As a result of Defendants' violations as set forth in this count, Plaintiff seeks economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorney's fees.

## COUNT VI: FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### (RICO Defendants; 2017 and 2018)

266.    Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

267.    This count sets forth a claim for damages resulting from the RICO Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("federal RICO").

268.    Plaintiff brings federal RICO claims against the RICO Defendants for the 2017 and 2018 seasons.

269.    Plaintiff is a "person" with standing to sue within the meaning of 18 U.S.C. § 1964(c).

270.    Each RICO Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3).

271.    City Pinestraw is a legal entity, and therefore an enterprise, within the meaning of 18 U.S.C. § 1961(4) ("City Pinestraw RICO Enterprise").

272.    The City Pinestraw RICO Enterprise is a Georgia domestic limited liability company with the common purpose to recruit, contract, transport, and employ foreign workers to work in agriculture and at the RICO Defendants' Taqueria and retail store.

273.    The City Pinestraw RICO Enterprise is engaged in interstate commerce in that its activities and transactions related to the international and interstate movement of workers affect interstate commerce and frequently require travel and communications across state and international lines.

274.    The City Pinestraw RICO Enterprise functions as a continuing unit.

275.    The RICO Defendants conducted or participated in—or Defendant Francisco Segura conducted or participated in and Defendant Maria Camelia Segura conspired to conduct or participate in—the affairs of the City Pinestraw RICO Enterprise, through a pattern of numerous acts of racketeering activity in violation of 18 U.S.C. § 1962(c) and/or 18 U.S.C. § 1962(d), related by their common goal to recruit, contract, transport, and employ foreign workers to work in agriculture and at the RICO Defendants' Taqueria and retail store.

276.    Specifically, the RICO Defendants conducted or participated in—or Defendant Francisco Segura conducted or participated in and Defendant Maria Camelia Segura conspired to conduct and/or participate in—the affairs of the City Pinestraw RICO enterprise by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

(a)    Mail fraud in violation of 18 U.S.C. § 1341;

(b)    Wire fraud in violation of 18 U.S.C. § 1343;

(c)    Fraud in foreign labor contracting in violation of 18 U.S.C. § 1351;

(d)    Forced labor in violation of 18 U.S.C. § 1589; and

(e)    Unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. § 1592.

### Predicate Acts

#### Mail and Wire Fraud: 18 U.S.C. §§ 1341 and 1343

277.    As set forth in the preceding paragraphs, the RICO Defendants, through the City Pinestraw RICO Enterprise, made and/or conspired to make material misrepresentations to the Plaintiff, to the USDOL, and to the GADOL, regarding pre-employment fees and costs, the wages Plaintiff would receive, and the work Plaintiff would perform (in 2017 and 2018).

278.     As set forth in the preceding paragraphs, the RICO Defendants, though the City Pinestraw RICO enterprise, used and/or conspired to use the mails and wire communications, including communications via telephone, fax, internet, and/or email, on numerous occasions to further these fraudulent schemes.

279.     These willful, knowing, and intentional acts constitute mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

<u>Fraud in Foreign Labor Contracting: 18 U.S.C. § 1351</u>

280.     As set forth in the preceding paragraphs, the RICO Defendants, through the City Pinestraw RICO Enterprise, knowingly and with intent to defraud did and/or conspired to recruit, solicit, and hire Plaintiff outside the United States, for the purpose of employment in the United States by means of materially false or fraudulent pretenses, representations, or promises regarding pre-employment fees and costs, the wages Plaintiff would receive, and the work Plaintiff would perform.

281.     These willful, knowing, and intentional acts constitute fraud in foreign labor contracting in violation of 18 U.S.C. § 1351.

<u>Forced Labor: 18 U.S.C. § 1589</u>

282.     As set forth in the preceding paragraphs, the RICO Defendants, through the City Pinestraw RICO Enterprise, did and/or conspired to knowingly provide and/or obtain Plaintiff's labor or services, or attempted to do so, by:

(a)     serious harm or threats of serious harm; and/or

(b)     abuse or threatened abuse of law or legal process; and/or

(c)     a scheme intended to cause Plaintiff to believe that if she did not perform labor or services for Defendants, they would suffer serious harm or physical restraint.

42

283.     These knowing acts constituted forced labor, in violation of 18 U.S.C. § 1589.

Unlawful Conduct with Respect to Documents in Furtherance of Forced Labor: 18 U.S.C. § 1592

284.     As set forth in the preceding paragraphs, the RICO Defendants, through the City Pinestraw RICO Enterprise, did and/or conspired to knowingly confiscate Plaintiff's passport, visa, and social security card and kept them from her in the course of, and with the intent of, violating 18 U.S.C. § 1589.

285.     These knowing acts constituted unlawful conduct with respect to documents in furtherance of forced labor, in violation of 18 U.S.C. § 1592.

### Pattern of Related Racketeering Acts

286.     The RICO Defendants engaged in the racketeering activity described in this Claim repeatedly in 2017 and 2018.

287.     The RICO Defendants repeatedly and continually forced Plaintiff to work in the RICO Defendants' Taqueria throughout 2017 and 2018, and in the RICO Defendants' Taqueria and store throughout 2018, in violation of Defendant Francisco Segura's attestations to USDOL and GADOL, and his promises to Plaintiff.

288.     Upon information and belief, the RICO Defendants have sought new H-2A workers for employment at Defendant City Pinestraw who may presently be subjected, through the City Pinestraw RICO Enterprise, to similar racketeering activities.

289.     The RICO Defendants, through the City Pinestraw RICO enterprise, rely on the racketeering acts described in this Complaint to conduct their regular business activities.

290.     The RICO Defendants' racketeering acts have or had similar purposes: to profit from the fraudulent recruitment of Plaintiff and other H-2A workers for employment on farms, raking pine straw, and working in the RICO Defendants' Taqueria and retail business.

43

291.    Each of the RICO Defendants' acts yielded similar results and caused similar injuries to Plaintiff, including Plaintiff having to incur pre-employment fees and expenses, interest on loans Plaintiff had to take out to pay those costs and fees, and receiving wages that were substantially lower than the wages fraudulently-promised.

292.    As set forth in the preceding paragraphs, the racketeering acts have or had similar participants: the RICO Defendants and their agents.

293.    As set forth in the preceding paragraphs, the RICO Defendants, through the City Pinestraw RICO Enterprise, directed their racketeering activities at similar individuals and entities: Plaintiff and other H-2A workers, and federal and state government agencies.

294.    The RICO Defendants' acts have or had similar methods of commission, such as common recruitment tactics, consistent practices with respect to collecting payments from Plaintiff and other H-2A workers, and use of similar employment practices and policies with respect to Plaintiff and other H-2A workers.

### Injury and Remedies

295.    As a direct and proximate result of the RICO Defendants' willful, knowing, and intentional acts discussed in this section, Plaintiff has suffered injuries to her property, including but not limited to the difference between the fraudulently-promised wage rates and the wages actually paid to Plaintiff, the pre-employment fees and costs Plaintiff paid, interest on the loans Plaintiff had to take out to pay for those fees and costs, and other pecuniary losses and/or losses to real or personal property.

296.    Plaintiff is entitled to an award of damages in an amount to be determined at trial, including but not limited to:

(a)      compensation for Plaintiff's injuries to her property;

(b)      trebling of the damages set forth in subparagraph (a), *supra*; and

(c)      attorneys' and experts' fees and costs associated with this action, as

authorized by 18 U.S.C. § 1964(c)

## COUNT VII - GEORGIA RACKETEER INFLUENCED AND CORRPORT ORGANIZATIONS ACT

### (RICO Defendants; 2017 and 2018)

297.    Plaintiff incorporates each of the allegations contained in the preceding

paragraphs by reference.

298.    Plaintiff brings Georgia RICO claims against the RICO Defendants for the 2017

and 2018 seasons.

299.    This count sets forth a claim for damages resulting from the RICO Defendants'

violations of the Georgia Racketeer Influenced and Corrupt Organizations Act,

O.C.G.A. §§ 16-14-1 – 16-14-12. ("Georgia RICO").

300.    Plaintiff is an aggrieved person as set forth in the Georgia RICO,

O.C.G.A. § 16-14-6(b).

301.    Plaintiff is a person who was injured by reason of violations of

O.C.G.A. § 16-14-4, and, therefore, Plaintiff has standing to sue pursuant to the Georgia RICO,

O.C.G.A. § 16-14-6(c).

302.    City Pinestraw is a legal entity, and therefore an enterprise, within the meaning of

O.C.G.A. § 16-14-3(3) ("City Pinestraw RICO Enterprise").

303.     The City Pinestraw RICO Enterprise is a Georgia domestic limited liability company with the common purpose to recruit, contract, transport, and employ foreign workers to work in agriculture and at the RICO Defendants' Taqueria and retail store.

304.     The City Pinestraw RICO Enterprise functions as a continuing unit.

305.     The RICO Defendants acquired and/or maintained control of the City Pinestraw RICO Enterprise through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(a).

306.     The RICO Defendants acquired and/or maintained control of real and personal property, including land, buildings, motor vehicles, and property and money associated with the RICO Defendants' Taqueria and retail operation, through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(a).

307.     The RICO Defendants were employed by or associated with the City Pinestraw RICO Enterprise and conducted or participated in—or Defendant Francisco Segura conducted or participated in and Defendant Maria Camelia Segura conspired or endeavored to conduct or participate in—the City Pinestraw RICO Enterprise through a pattern of racketeering activity in violation of O.C.G.A. §§ 16-14-4(b) and 16-14-4(c), related by their common goal to recruit, contract, transport, and employ foreign workers to work in agriculture and at the RICO Defendants' Taqueria and retail store.

308.     Specifically, the predicate acts of racketeering activity by which the RICO Defendants committed the Georgia RICO violations set forth in the preceding paragraphs, were:

(a)     False statements and writings against public officers or public employees in violation of O.C.G.A. § 16-10-20[34;]

---

[34] *See* O.C.G.A. § 16-14-3(5)(A)(xxii)

(b)　　Perjury and other related offenses in violation of O.C.G.A. §§ 16-10-70 –

16-10-72[35]; and

(c)　　The conduct defined as "racketeering activity" as set forth in Plaintiff's

federal RICO claims, ¶¶ 284-292, *supra*.[36]

## **Predicate Acts**

### False Statements Against Public Officers or Employees: O.C.G.A. § 16-10-20

309.　　As set forth in the preceding paragraphs, the RICO Defendants, through the City

Pinestraw RICO Enterprise, did or conspired to knowingly and willfully falsify material facts

and make false, fictitious, or fraudulent statements or representations regarding pre-employment

fees and costs, the wages Plaintiff would receive, and the work Plaintiff would perform (in 2017

and 2018) to the GADOL in the 2015, 2017, and 2018 Job Orders.

310.　　These knowing and willful acts constituted false statements against public officers

or employees, in violation of O.C.G.A. § 16-10-20.

### Perjury and Related Offenses (False Swearing): O.C.G.A. § 16-10-71

311.　　As set forth in the preceding paragraphs, the RICO Defendants, though the City

Pinestraw RICO Enterprise, did or conspired to execute the Form ETA, 9142A, Appendix A of

the 2017 and 2018 Applications for Certification, which contained a lawful oath or affirmation,

in which Defendant Francisco Segura knowingly and willfully made false statements regarding

pre-employment fees and costs, the wages Plaintiff would receive, and the work Plaintiff would

perform.

---

[35]　*See* O.C.G.A. § 16-14-3(5)(A)(xxv)
[36]　*See* O.C.G.A. § 16-14-3(5)(C)

312.    These knowing and willful acts constituted false swearing, in violation of

O.C.G.A. § 16-10-20.

<u>Conduct Defined as "Racketeering" in the Federal RICO</u>

313.    As set forth in the preceding paragraphs, the RICO Defendants, through the City

Pinestraw RICO Enterprise, committed mail and wire fraud, in violation of 18 U.S.C. §§ 1341

and 1343; fraud in foreign labor contracting, in violation of 18 U.S.C. §§ 1351; forced labor, in

violation of 18 U.S.C. § 1589; and unlawful conduct with respect to documents in furtherance of

forced labor, in violation of 18 U.S.C. § 1592.

314.    Paragraphs 275-283, *supra*, are incorporated herein by reference.

**Pattern of Related Racketeering Acts**

315.    The RICO Defendants engaged in the racketeering activity described in this

Claim repeatedly in 2017 and 2018.

316.    The RICO Defendants repeatedly and continually forced Plaintiff to work in the

RICO Defendants' Taqueria throughout 2017 and 2018, and in the RICO Defendants' Taqueria

and store throughout 2018, in violation of Defendant Francisco Segura's representations to the

GADOL, sworn statements to the USDOL, and promises to Plaintiff.

317.    Upon information and belief, the RICO Defendants have sought new H-2A

workers for employment at Defendant City Pine Straw who may presently be subjected, through

the City Pinestraw RICO Enterprise, to similar racketeering activities.

318.    The RICO Defendants, through the City Pinestraw RICO enterprise, rely on the

racketeering acts described in this Complaint to conduct their regular business activities.

319.     The RICO Defendants' racketeering acts have or had similar purposes: to profit from the fraudulent recruitment of Plaintiff and other H-2A workers for employment on farms, raking pine straw, and working in the RICO Defendants' Taqueria and retail business.

320.     Each of the RICO Defendants' acts yielded similar results and caused similar injuries to Plaintiff, including Plaintiff having to incur pre-employment fees and costs, taking out loans at 20 percent interest to pay for those fees and costs, and receiving wages that were substantially lower than the wages fraudulently-promised.

321.     As set forth in the preceding paragraphs, the racketeering acts have or had similar participants: the RICO Defendants and their agents.

322.     As set forth in the preceding paragraphs, the RICO Defendants, through the City Pinestraw RICO Enterprise, directed their racketeering activities at similar individuals and entities: Plaintiff and other H-2A workers, and federal and state government agencies.

323.     The RICO Defendants' acts have or had similar methods of commission, such as common recruitment tactics, relatively consistent practices with respect to collecting payments from Plaintiff and other H-2A workers, and use of similar employment practices and policies with respect to Plaintiff and other H-2A workers.

### **Injury and Remedies**

324.     As a direct and proximate result of the RICO Defendants' willful, knowing, and intentional acts discussed in this section, Plaintiff has suffered injuries to her property, including but not limited to the difference between the fraudulently-promised wage rates and the wages received by Plaintiff, the pre-employment fees and costs Plaintiff paid, the interest on the loans Plaintiff had to take out to pay for those fees and costs, and other pecuniary losses and/or losses to real or personal property.

325.    Plaintiff is entitled to an award of damages in an amount to be determined at trial, including but not limited to:

       (a)    compensation for Plaintiff's injuries to her property;

       (b)    trebling of the damages set forth in subparagraph (a), supra;

       (c)    punitive damages; and

       (d)    attorneys' and experts' fees and costs associated with this action, as authorized by O.C.G.A 16-14-6(c).

326.    Further, Plaintiff seeks an order:

       (a)    Requiring the RICO Defendants to divest themselves of any interest in the Georgia Pinestraw RICO Enterprise and real or personal property they acquired through the pattern of racketeering activity, as set forth in O.C.G.A. § 16-14-6(a)(1) and which is permitted as a civil remedy by O.C.G.A. § 16-14-6(b);

       (b)    Prohibiting the RICO Defendants from engaging in the same type of endeavor as they did through the City Pinestraw RICO Enterprise, including operating a farm labor contracting business, a Taqueria, and a grocery store, as set forth in O.C.G.A. § 16-14-6(a)(2) and which is permitted as a civil remedy by O.C.G.A. § 16-14-6(b);

       (c)    Ordering the dissolution of Defendant City Pinestraw as set forth in O.C.G.A. § 16-14-6(a)(3) and which is permitted as a civil remedy by O.C.G.A. § 16-14-6(b);Ordering the suspension or revocation of any licenses, permits, or prior approvals any agency of the state granted to the RICO Defendants for the operation of the City Pinestraw RICO Enterprise, including licenses or permits to operate a labor camp and business licenses to operate the RICO Defendants' Taqueria and grocery store, as set forth in O.C.G.A. § 16-14-6(a)(4) and which is permitted as a civil remedy by O.C.G.A.

§ 16-14-6(b); and

      (d)     Ordering the forfeiture of the charter of Defendant City Pinestraw, as set forth in O.C.G.A. § 16-14-6(a)(5) and which is permitted as a civil remedy by O.C.G.A. § 16-14-6(b).

## COUNT VII – SEX DISCRIMINATION IN VIOLATION OF TITLE VII

### (All Defendants; 2018)

327.    Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

328.    Plaintiff brings Title VII sex discrimination claims against all Defendants for the 2018 season.

329.    Sex was a motivating factor for Defendant to require Plaintiff to work at the Taqueria, rather than permitting her to work in agriculture, where she would have earned higher wages and received wages on a weekly basis.

330.    But for Plaintiff's sex, Defendants would have permitted her to work in agriculture, where she would have earned higher wages and received wages on a weekly basis, rather than at the Taqueria.

331.    By requiring Plaintiff to work at the Taqueria, rather than permitting her to work in agriculture, Defendants discriminated against Plaintiff based on her sex.

332.    By the conduct alleged in this Complaint, Defendants unlawfully discriminated against Plaintiff on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(b).

333.    As a result of the Defendants' violations as set forth in this count, Plaintiff seeks economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorney's fees.

## COUNT VIII  - VIOLATION OF 26 U.S.C. §7434 (Filing False Information Returns)
### (Defendant City Pinestraw; 2017 and 2018)

334.    Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

335.    Plaintiff brings claims pursuant to 26 U.S.C. § 7424 against City Pinestraw for the 2017 and 2018 seasons.

336.    As set forth in paragraphs 208-215, *supra*, in 2017 and 2018, the Defendants either did not file IRS Form 941 or other information return, in an attempt to defraud the IRS, or Defendants filed fraudulent information with the IRS as to Plaintiff's earnings and withholdings.

337.    Plaintiff therefore is entitled, under 26 U.S.C. §7434(b), to recover the greater of either $5,000.00 for each false information return or damages Plaintiff sustained, the costs of this action, and reasonable attorney's fees.

338.    As required by 26 U.S.C. § 7424(d), Plaintiff will provide a copy of this Complaint to the Internal Revenue Service.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

(a)      Grant judgment against Defendants, in favor of Plaintiff, in the amount of her unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b);

(b)      Grant judgment against Defendants, in favor of Plaintiff, in the amount of Plaintiff's damages as they arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(c)      Grant judgment against Defendants, in favor of Plaintiff, in the amount of her compensatory damages, for the RICO Defendants' violations of the TVPRA as proved, including the promised contractual hourly wage for Plaintiff's work, punitive damages, and damages for the emotional harm that the RICO Defendants' TVPRA violations caused;

(d)      Grant judgment against Defendants, in favor of Plaintiff, for the trebled amount of her pecuniary losses caused as a consequence of the RICO Defendants' violations of the federal RICO;

(e)      Grant judgment against Defendants, in favor of Plaintiff, for the trebled amount of her pecuniary losses caused as a consequence of the RICO Defendants' violations of the Georgia RICO, as well as punitive damages;

(f)      Entering an order providing for injunctive relief, including the divestitures, prohibitions, dissolutions, suspensions, revocations, and forfeitures permitted under the Georgia RICO, as a consequence of the RICO Defendants' violations of the Georgia RICO;

(g)     Grant judgment against Defendants, in favor of Plaintiff, in the amount of her compensatory damages, for the Defendants' violations of Title VII as proved, including the economic losses, punitive damages, and damages for the emotional harm that the Defendants' Title VII violations caused;

(h)     Grant judgment against Defendants, in favor of Plaintiff, in the amount of the greater of either $5,000.00 for each false information return or damages Plaintiff sustained as a consequence of Defendants' violations of 26 U.S.C. §7434(b);

(i)     Grant Judgment against Defendants, in favor of Plaintiff, in the amount of Plaintiff's damages, including general, special, and emotional distress damages, caused by Defendants' negligence and/or willful, wanton, or malicious conduct;

(j)     Declare the Defendant City Pinestraw is an alter ego of the RICO Defendants;

(k)     Award Plaintiff pre- and post-judgment interest as allowed by law;

(l)     Award Plaintiff attorney's fees and the costs of this action; and

(m)     Award Plaintiff such further relief, at law or in equity, as this Court deems just and proper.


This 7th day of September, 2020.          Respectfully submitted,

                                          */s/ Solimar Mercado-Spencer*
                                          Solimar Mercado-Spencer
                                          Lead Counsel
                                          Georgia Bar No. 686614
                                          E-mail: smercado-spencer@glsp.org

                                          */s/ Lisa J. Krisher*
                                          Lisa J. Krisher
                                          Georgia Bar No. 429762
                                          E-mail: lkrisher@glsp.org

Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:     (404) 463-1623

*/s/ Daniel Werner*
Daniel Werner
Georgia Bar No. 422070
Email: dan@decaturlegal.com
RADFORD & KEEBAUGH, LLC
315 W. Ponce de Leon Ave., Suite 1080
Decatur, GA  30030
Phone:  (678)271-0304
Fax:     (678)271-0314

*Attorneys for Plaintiff*