# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| LUCIA FELIX RODRIGUEZ, | : |
| Plaintiff, | : |
| v. | : Civil Action No.: |
| CITY PINESTRAW AND HARVESTING, LLC; FRANCISCO SEGURA; and MARIA CAMELIA SEGURA; | : |
| Defendants. | : |

# RICO STATEMENT
S.D. Ga. LR 9.1

This statement includes the facts the Plaintiff is relying upon to initiate this RICO complaint as a result of the "reasonable inquiry" required by Federal Rule of Civil Procedure 11. In particular, this statement complies with the form set forth in this Court's October 2, 1989, RICO Order as set forth below:

**1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. § 1962(a), (b), (c) and/or (d).**

RESPONSE:

The alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(c) and (d).

**2. List each defendant and state the alleged misconduct and basis of liability of each defendant.**

RESPONSE:

1

Plaintiffs allege Defendants Francisco Segura and Maria Camelia Segura violated the RICO.[1] The alleged misconduct and basis of liability against each of the RICO Defendants is as follows:

As set forth in the Complaint, in 2017 and 2018, Defendant Francisco Segura, through RICO enterprise City Pinestraw and Harvesting, LLC (as the RICO enterprise, "the City Pinestraw RICO Enterprise"), submitted Job Orders to the Georgia Department of Labor ("GADOL") and to Plaintiff Lucia Felix Rodriguez ("Plaintiff") and other H-2A workers. The Job Orders included an "Employer's Certification," which Mr. Segura signed, certifying the terms and conditions of employment in the Job Orders were accurate. The Job Orders included the following terms:

>   (a)   A prohibition against employers and their agents from seeking or receiving payment from any worker for application fees and recruitment costs. See 20 C.F.R. § 655.135(j).
>
>   (b)   In the 2017 Job Order, work to begin on March 15, 2017 and continue until August 15, 2017; in the 2018 Job Order, work to begin February 28, 2018 and continue until October 20, 2018.
>
>   (c)   Job duties to include harvesting blueberries (2017 and 2018), blackberries (2017 and 2018); strawberries (2018 only); and pine straw (2018 only).
>
>   (d)   An hourly wage of not less than the adverse effect wage rate ("AEWR") of $10.62 per hour and a piece rate of $0.50 per pound (2017); and the AEWR of $10.95

---

[1] Plaintiff will refer to Defendants Francisco Segura and Maria Camelia Segura as "the RICO Defendants." Plaintiffs do not allege Defendant City Pinestraw and Harvesting, LLC ("City Pinestraw") violated the RICO. Rather, City Pinestraw was the RICO enterprise.

2

per hour and a piece rate of $0.50 per pound of blueberries, 3.00 per box of strawberries and blackberries, and $0.85 per bale of pine straw (2018).

(e)  Wages to be paid weekly.

When Mr. Segura signed the certifications in the Job Orders, he knew some of the information he certified was false. He knew Plaintiff and other H-2A workers would pay recruitment and application fees and costs to City Pinestraw's agents; that Plaintiff and other H-2A workers would work at the RICO Defendants' Taqueria, which was not in agriculture nor one of the enumerated job duties; and the RICO Defendants would not pay the applicable AEWR.

Further, in 2017 and 2018, Mr. Segura, through the City Pinestraw RICO Enterprise, signed and submitted to the U.S. Department of Labor ("USDOL") temporary labor certification applications ("Applications for Certification"). Upon submitting the Applications for Certification, Mr. Segura was required to, and did, sign a declaration swearing under penalty of perjury that

(a)  "the employer understands that it must offer, recruit at, and pay a wage that is at least the highest of the adverse effect wage rate at the time the job order is placed, the prevailing hourly or piece rate, the agreed-upon collective bargaining rate (CBA), or the Federal or State minimum wage…." Form ETA-9142A, Appendix A at ¶ B(5).

(b)  "the employer … [w]ill comply with applicable Federal, State and local employment-related laws and regulations…." *Id.* at ¶ B(8).

(c)  "The employer and its agents have not sought or received payment of any kind from the H-2A worker for any activity related to obtaining labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs. For

3

purposes of this paragraph, payment includes, but is not limited to, monetary payments, wage concessions (including deductions from wages, salary, or benefits), kickbacks, bribes, tributes, in kind payments, and free labor." *Id.* at ¶ B(10).

(d)   "The employer has and will contractually forbid any foreign labor contractor or recruiter whom the employer engages in international recruitment of H-2A workers to seek or receive payments from prospective employees, except as provided for in DHS regulations."

At the time Mr. Segura signed the sworn declarations, he knew these statements were false.  He knew City Pinestraw would not pay Plaintiff the AEWR; City Pinestraw would not comply with federal, state, and local statutes and regulations with respect to mandatory minimum wages, charging and reimbursing pre-employment fees and costs, housing conditions, and the requirement that H-2A workers only be employed in agriculture; City Pinestraw's agents had sought and received, or would seek and receive, payments from Plaintiff and other H-2A workers for activities related to labor certification, and that he did not forbid foreign labor recruiters from receiving these payments; and Plaintiff and other H-2A workers would not work in agriculture, in violation of federal law.

Mr. Segura, through City Pinestraw RICO Enterprise, used the mail and/or wires to transmit the temporary labor certification application materials between himself, his agents, USDOL, GADOL, and Plaintiff. He also used the mail and/or wires in other manners in furtherance of the scheme to provide false information to USDOL, GADOL, and Plaintiff.

In 2017 and 2018, the RICO Defendants, through the City Pinestraw RICO Enterprise, also forced Plaintiff to work at their Taqueria through threats of serious harm, as well as threatened and actual abuse of legal process.  The RICO Defendants confiscated Plaintiff's

passport, visa, and social security card in the course of forcing Plaintiff to work at the Taqueria.

Specifically, the RICO Defendants conducted or participated in and/or conspired to conduct the affairs of the RICO Enterprise by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

a. Mail fraud to further their unlawful scheme in violation of 18 U.S.C. § 1341;

b. Wire fraud to further their unlawful scheme in violation of 18 U.S.C. § 1343;

c. Fraud in foreign labor contracting in violation of 18 U.S.C. § 1351;

d. Forced labor in violation of 18 U.S.C. § 1589; and

e. Unlawful conduct with respect to documents in violation of 18 U.S.C. § 1592.

**3. List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.**

RESPONSE:

Plaintiff does not allege Defendant City Pinestraw violated the RICO, but rather functioned as the RICO enterprise. Plaintiff alleges Defendant City Pinestraw, was an alter ego of the RICO Plaintiffs. In its fictitious corporate form, Defendant City Pinestraw, along with the RICO Defendants, violated the Fair Labor Standards Act and Georgia contract law.

**4. List the alleged victims and state how each victim was allegedly injured.**

RESPONSE:

As a direct and proximate result of the RICO Defendants' willful, knowing, and intentional acts discussed above, Plaintiff suffered injuries to her property and/or business, including but not limited to the difference between the fraudulently-promised regular and overtime wage rates and the wages Plaintiff was paid, Plaintiff's recruitment and other pre-employment fees and costs, interest on loans to pay these fees and costs, and other pecuniary

5

losses and/or losses to real or personal property.

**5. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:**

**(a) List the alleged predicate acts and the specific statutes which were allegedly violated;**

RESPONSE:

The RICO Defendants conducted or participated in and/or conspired to conduct the affairs of the RICO Enterprise by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

a. Mail fraud to further their unlawful scheme in violation of 18 U.S.C. § 1341;

b. Wire fraud to further their unlawful scheme in violation of 18 U.S.C. § 1343;

c. Fraud in foreign labor contracting in violation of 18 U.S.C. § 1351;

d. Forced labor in violation of 18 U.S.C. § 1589; and

e. Unlawful conduct with respect to documents in violation of 18 U.S.C. § 1592.

**(b) Provide the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding the predicate acts;**

RESPONSE:

January or February 2017 (specific date in custody and control of the RICO Defendants): Defendant Francisco Segura, through the City Pinestraw RICO Enterprise, signed the certification in the 2017 Job Order and the sworn declaration in the 2017 Application for Certification, both of which contained fraudulent representations.

6

January or February 2017 (specific date in custody and control of the RICO Defendants): Defendant Francisco Segura, through the City Pinestraw RICO Enterprise, transmitted the 2017 Job Order through the mail and/or wires to GADOL..   He also transmitted the 2017 Application for Certification to USDOL.

February or March 2017 (specific date in custody and control of the RICO Defendants): GADOL approved the 2017 Job Order in reliance on Francisco Segura's fraudulent representations.

March 16, 2017: USDOL certified (approved) the 2017 Application for Certification based on Francisco Segura's fraudulent representations.

April 2017: Plaintiff paid approximately $680 in pre-employment fees and costs.

April 24 or 25, 2017: The RICO Defendants or their agent, through the City Pinestraw RICO Enterprise, transmitted the 2017 Job Order to Plaintiff through the mail or wires.

April 24 or 25, 2017: Plaintiff accepted the job offer in the 2017 Job Order in reliance on Francisco Segura's fraudulent representations.

On or about April 28, 2017 through January 30, 2018: The RICO Defendants, through the RICO enterprise, forced Plaintiff to work at their Taqueria.

On or about April 28, 2017: The RICO Defendants confiscated Plaintiff's passport, visa, and social security card in the course of forcing Plaintiff to work at the Taqueria.

On or about January 24, 2018: Defendant Francisco Segura, through the City Pinestraw RICO Enterprise, signed the certification in the 2018 Job Order, which contained fraudulent representations, and transmitted the 2018 Job Order to GADOL via the mail and/or wires.

February or March 2018 (specific date in custody and control of the RICO Defendants): GADOL approved the 2018 Job Order in reliance on Francisco Segura's fraudulent representations.

February 2, 2018: Defendant Francisco Segura, through the City Pinestraw RICO Enterprise, signed the sworn declaration in the 2018 Application for Certification, which contained fraudulent representations.

On or about February 20, 2018: Defendant Francisco Segura transmitted the 2018 Application for Certification via the mail and/or wires to USDOL.

March 5, 2018: USDOL certified (approved) the 2018 Application for Certification based on Francisco Segura's fraudulent representations.

On or about March 19, 2018: : Plaintiff accepted the job offer in the 2018 Job Order in reliance on Francisco Segura's fraudulent representations.

February through April 2018: Plaintiff paid approximately $685 in pre-employment fees and costs.

On or about March 24, 2018 through October 5, 2018: The RICO Defendants forced Plaintiff to work at their Taqueria.

On or about March 24, 2018: The RICO Defendants confiscated Plaintiff's passport, visa, and social security card in the course of forcing Plaintiff to work at the Taqueria.

**(c) If the RICO claim is based on the predicate offenses of wire fraud, mail fraud or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and content of the alleged misrepresentations and the identity of persons to whom and by whom the alleged misrepresentations were made;**

RESPONSE:

The dates, content, and individuals who made the alleged misrepresentations are set forth in Plaintiff's response to paragraph 5(a), *supra*.

Upon information and belief, the misrepresentations in the USDOL labor certification applications were made at the offices of City Pinestraw and transmitted to USDOL's processing center, located at the Office of Foreign Labor Certification's Chicago National Processing Center at 11 West Quincy Court, Chicago, Illinois 60604-2105.

The misrepresentations to Plaintiffs were made in April 2017 and 2018 in the city of Monterrey, Mexico.

The contents of the misrepresentations consisted of statements about the wages Plaintiff would be paid and the pre-employment fees and costs, which the RICO Defendants knew to be false.

As set forth above, Defendant Francisco Segura, through the City Pinestraw RICO Enterprise, made the misrepresentations.

**(d) State whether there has been a criminal conviction for violation of the predicate acts;**

RESPONSE:

There has not been a criminal conviction for the violations of the predicate acts.

**(e) State whether civil litigation has resulted in a judgment in regard to the predicate acts;**

RESPONSE:

Civil litigation has not resulted in a judgment in regard to the predicate acts.

**(f) Describe how the predicate acts form a "pattern of racketeering activity";**

9

RESPONSE:

The RICO Defendants, through the City Pinestraw RICO Enterprise, engaged repeatedly in the fraud-related racketeering activity set forth in Plaintiff's RICO claims in 2017 and 2018 with respect to dozens of workers and subjected Plaintiff and several other workers to forced labor at the Taqueria. Further, Plaintiff the RICO Defendants sought new H-2A workers, who may have been subject to similar racketeering activities, for employment at their business operations in 2019.

The RICO Defendants, through the RICO enterprise, rely on the racketeering acts described in this Complaint to conduct their regular business activities.

The RICO Defendants' racketeering acts have or had similar purposes: to profit from the fraudulent recruitment of Plaintiff and other H-2A workers for employment at farms and at their Taqueria in Georgia.

The RICO Defendants' acts yielded similar results and caused similar injuries to Plaintiff, including Plaintiff's payment of recruitment fees and expenses, and the difference between the fraudulently-promised wages and the wages Plaintiff was paid.

The racketeering acts have or had similar participants: the RICO Defendants and their agents.

The RICO Defendants, through the RICO Enterprise, directed their racketeering activities at similar individuals and entities: Plaintiff and other H-2A workers, and federal and state government agencies.

The RICO Defendants' acts have or had similar methods of commission, such as common recruitment tactics, relatively consistent practices with respect to collecting payments from Plaintiff and other H-2A workers, and use of similar employment practices and policies

with respect to Plaintiff and other H-2A workers.

      **(g) State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.**

RESPONSE:

The alleged predicate acts related to each other as part of a common plan to profit from the fraudulent recruitment of Plaintiff and other H-2A workers for employment at farms and at their Taqueria in Georgia, and to profit from the forced labor of Plaintiff and other H-2A workers at the Taqueria.

**6. Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**

      **(a) State the names of the individuals, partnerships, corporations, associations or other legal entities which allegedly constitute the enterprise;**

RESPONSE:

The enterprise is City Pinestraw and Harvesting, LLC.

      **(b) Describe the structure, purpose, function and course of conduct of the enterprise;**

RESPONSE:

The City Pinestraw RICO Enterprise is a Georgia Limited Liability Company with the common purpose of to recruit, contract, transport, and employ foreign workers to work as in agriculture and at the RICO Defendants' Taqueria in Georgia.

      **(c) State whether any defendant is an employee, officer or director of the alleged enterprise;**

RESPONSE:

The City Pinestraw Articles of Organization list RICO Defendants Maria Camelia Segura and Francisco Segura as the organizers of the LLC. According to State of Georgia Secretary of State annual reports, at relevant times RICO Defendants Maria Camelia Segura and Francisco Segura alternated as owners, organizers, and registered agents of City Pinestraw.

**(d) State whether any defendant is associated with the alleged enterprise;**

RESPONSE:

Each RICO Defendant is associated with the alleged enterprise.

**(e) State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise or that the defendants are the enterprise itself, or members of the enterprise; and**

RESPONSE:

The RICO Defendants are members of the enterprise.

**(f) If any defendant is alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments or victims of the alleged racketeering activity.**

RESPONSE:

As members of the enterprise, the RICO Defendants are perpetrators, through the enterprise, of the alleged racketeering activity.

**7. State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

RESPONSE:

The pattern of racketeering activity and the enterprise are separate. The enterprise exists independently from the racketeering activity as an ongoing business entity owned and operated

by the RICO Defendants with the common purpose to recruit, contract, transport, and employ foreign workers to work in agriculture and at the RICO Defendants' Taqueria in Georgia.

**8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how, if at all, the racketeering activity differs from the usual and daily activities of the enterprise.**

RESPONSE:

As set forth above, the usual and daily activities of the enterprise consist of recruiting, contracting, transporting, and employing foreign workers to work in agriculture and at the RICO Defendants' Taqueria in Georgia. The RICO Defendants participated in and conducted the affairs of the enterprise through a pattern of defrauding the USDOL, the GADOL, and Plaintiff and forcing Plaintiff to work in Defendants' Taqueria, as described above.

**9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

RESPONSE:

The alleged pattern of racketeering activity advanced the purpose and goal of the enterprise to recruit, contract, transport, and employ foreign workers to work in agriculture and at the RICO Defendants' Taqueria in Georgia. By paying less than the wages communicated to USDOL, GADOL, and Plaintiff and therefore reducing their overhead, the RICO Defendants, as the operators and/or managers of the RICO enterprise, benefitted from conducting and participating in the RICO enterprise's affairs through the pattern of racketeering activity. The RICO Defendants increased their profits far above what those profits would have been absent the mail fraud, wire fraud, and fraud in foreign labor contracting predicate acts. Further, by forcing Plaintiff to work at their Taqueria for sub-minimum wages, the RICO Defendants, through the

RICO enterprise, excised themselves from the free market of labor, which otherwise would have required the RICO Defendants to compete with other employers for workers and offer higher wages and better working conditions to attract employees. As such, the RICO Defendants increased their profits by using the RICO enterprise to subject Plaintiff to forced labor.

**10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

RESPONSE:

The RICO Defendants, through the RICO enterprise, recruited Plaintiff and other H-2A workers in Mexico and transported them across international and state boundaries for the purpose of employing them in Georgia. Plaintiff and other H-2A workers themselves handled or otherwise worked on goods or materials that had been moved in or produced for interstate commerce. Further, by using the mail and wires in furtherance of the fraudulent acts, the enterprise has an inherent nexus with interstate commerce. Finally, the RICO Defendants, through the RICO enterprise, operated an interstate and international money wiring business. Plaintiff and other H-2A workers worked at this money wiring operation.

**11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

  **(a) State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and**

RESPONSE:

This sub-part does not apply to Plaintiff's claims.

  **(b) Describe the use or investment of such income.**

RESPONSE:

14

This sub-part does not apply to Plaintiff's claims.

**12. If the complaint alleges a violation of 28 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

RESPONSE:

This sub-part does not apply to Plaintiff's claims.

**13. If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:**

    **(a) State who is employed by or associated with the enterprise; and**

RESPONSE:

RICO Defendants Francisco Segura and Maria Camelia Segura are associated with the enterprise.

    **(b) State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

RESPONSE:

The RICO Defendants are not both the liable "persons" and the "enterprise" under § 1962(c).

**14. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.**

RESPONSE:

Plaintiff alleges violation of 18 U.S.C. § 1962(d) in the alternative as to RICO Defendant Maria Camelia Segura's direct participation, through the enterprise, in predicate acts. To the extent Ms. Segura was not a direct perpetrator, she conspired with Defendant Francisco Segura by knowingly providing support to the violations of his sworn declarations to USDOL in the

15

2017 and 2018 Applications for Certification and representations to GADOL and to Plaintiff in the 2017 and 2018 Job Orders.  Specifically, in addition to serving as an officer of the RICO enterprise, Ms. Segura and Mr. Segura jointly operated the Taqueria and directly supervised Plaintiff and other H-2A workers who worked there.  Upon information and belief, this included overseeing payroll and the working conditions that contributed to Plaintiff's forced labor claims.

**15. Describe the alleged injury to business or property.**

RESPONSE:

Plaintiff suffered injury to business or property by being deprived of the funds she expended for pre-employment fees and costs and by being deprived of the promised wages.

**16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

RESPONSE:

Plaintiff suffered damages by reason of the RICO Defendants' violations of the RICO statute. The RICO Defendants, through the RICO enterprise, knowingly provided false information to the USDOL and GADOL regarding the wages they would pay Plaintiff. The USDOL and GADOL relied upon these fraudulent communications when they granted labor certification to and approved the Job Order for City Pinestraw.  The direct result of the RICO Defendants' fraud was the Plaintiff's unpaid promised wages and the Plaintiff's pre-employment fees and costs, as well as interest Plaintiff paid on loans to cover those fees and costs.

Further, the RICO Defendants, through the RICO enterprise, promised wages directly to Plaintiff which the RICO Defendants knew to be false. Plaintiff relied upon these misrepresentations when she accepted the job opportunities and paid the pre-employment fees and costs, as well as interest on those fees and costs. Plaintiff also earned depressed wages as a

direct consequence of the RICO Defendants' fraud conducted through the RICO enterprise.

**17. List the damages sustained for which each defendant is allegedly liable.**

RESPONSE:

The RICO Defendants are liable for the difference between the fraudulently-promised regular and overtime wage rates and the wages Plaintiff was paid, the pre-employment fees and costs Plaintiff paid in reliance upon the Defendants' misrepresentations about the Plaintiff's wages, interest on loans Plaintiff had to take out to pay those fees and costs, and other pecuniary losses and/or losses to real or personal property up to the point at which each Plaintiff's employment with Defendants was terminated.

**18. List all other federal causes of action, if any, and provide the relevant statute numbers.**

RESPONSE:

- Minimum wage and overtime violations, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 206 and 207.
- Forced labor and Unlawful Conduct with Respect to Documents, pursuant to the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. §§ 1589, 1592, and 1595.
- Filing of false information returns, pursuant to 26 U.S.C. § 7434.

**19. List all pendent state claims, if any.**

RESPONSE:

- Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. §§ 16-14-1, *et seq.*
- Georgia contract law.

**20. Provide any additional information that you feel would be helpful to the Court in processing your RICO claim.**

RESPONSE:

Plaintiff does not believe there is additional information not already provided in this statement and in the Complaint that would be helpful to the Court in considering the Plaintiff's RICO claims.

This 7th day of September, 2020.                    Respectfully submitted,

*/s/ Solimar Mercado-Spencer*
Solimar Mercado-Spencer
Lead Counsel
Georgia Bar No. 686614
E-mail: smercado-spencer@glsp.org

*/s/ Lisa J. Krisher*
Lisa J. Krisher
Georgia Bar No. 429762
E-mail: lkrisher@glsp.org

Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:     (404) 463-1623

*/s/ Daniel Werner*
Daniel Werner
Georgia Bar No. 422070
Email: dan@decaturlegal.com
RADFORD & KEEBAUGH, LLC
315 W. Ponce de Leon Ave., Suite 1080
Decatur, GA  30030
Phone:  (678)271-0304
Fax:     (678)271-0314

*Attorneys for Plaintiff*